# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5339 | DATE | 04/23/2003 |
| CASE TITLE | Chilmark v. MTS, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants TRI's et. al. Motion to Dismiss (doc. #19)
Defendant TRKK's Motion to Dismiss (doc. #25)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Enter memorandum opinion and order. For the attached reasons, TRI's motion to dismiss (doc. #19) is GRANTED with prejudice, terminating Tower Records, Inc., The Russell Solomon Trust, The Michael T. Solomon 1994 Trust, The David Solomon 1994 Trust, The Andrew Solomon Trust, the Aaron O. Solomon Trust, Russell Solomon, and Michael T. Solomon. Defendant Tower Records Kabushiki Kaisha's motion to dismiss (doc. #25) is DENIED.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 25 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | 44 |
| | Copy to judge/magistrate judge. | | | |
| JHC | | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHILMARK PARTNERS, LLC, )
 )
    Plaintiff, )
 )
    v. ) Case No. 02 C 5339
 )
 )
MTS, INC., TOWER RECORDS KABUSHIKI ) Judge William J. Hibbler
KAISHA, TOWER RECORDS, INC., THE RUSSELL )
SOLOMON TRUST, THE MICHAEL T. SOLOMON )
1994 TRUST, THE DAVID SOLOMON 1994 TRUST, )
THE ANDREW SOLOMON TRUST, THE AARON O. )
SOLOMON TRUST, RUSSELL SOLOMON, AND )
MICHAEL T. SOLOMON, )
 )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Investment banking firm Chilmark Partners alleges that MTS, Inc., and several alleged subsidiaries and affiliates, violated the terms of a May 18, 2001, contract under which Plaintiff provided financial advice on debt restructuring and asset sales in exchange for certain fees. On June 12, 2002, Michael T. Solomon, President and CEO of MTS, terminated Chilmark's services, contending that Chilmark had materially breached the agreement. Chilmark requested that MTS and its subsidiary Tower Records Kabushiki Kaisha (TRKK) pay over $2.6 million for services it already performed, but MTS refused to pay. Chilmark then sued MTS, contending it was owed fees and expenses for its services. Chilmark also named TRKK, Tower Records, Inc. (TRI), various trusts (trust Defendants), and Russell and Michael Solomon (individual Defendants), alleging that they were parties to the contract because they were subsidiaries or affiliates of MTS. All Defendants but

1

MTS (collectively, moving defendants) move to dismiss the complaint against them pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2). For the following reasons, the Court DENIES TRKK's motions and GRANTS the 12(b)(6) motions of TRI, the trust Defendants, and the individual Defendants.

## I. FACTS

MTS entered into an agreement with Chilmark, an Illinois-based investment company, in which Chilmark agreed to help MTS restructure its debts and assets. MTS's President, Michael Solomon, and Chilmark's managing member, David Schulte, signed a May 18, 2001 letter outlining the terms of the parties' agreement. The letter confirmed the parties' understanding that the agreement was between Chilmark and MTS, "together with any subsidiaries and affiliates." The agreement, however, did not specifically name the "subsidiaries and affiliates" or define in any way the parties' understanding of the terms "subsidiaries and affiliates." In its First Amended Complaint (hereafter, Complaint), Chilmark alleges that the Defendants breached the agreement when they failed to pay Plaintiff $2.5 million for successfully restructuring the company's debt, as well as a $121,464 in unpaid expenses and retainer fees.

Chilmark alleges that TRKK, TRI, the trust Defendants, and the individual Defendants were parties to the contract based on their status as subsidiaries or affiliates of MTS. Chilmark further alleges that TRKK is a subsidiary of MTS and that pursuant to the parties' agreement Chilmark performed services for TRKK and consulted with TRKK executives. For example, Chilmark alleges that it recommended and brokered the sale of TRKK. Chilmark further alleges that "MTS and its subsidiary, TRKK" entered into a credit agreement with a group of banks, and, later, together renegotiated the credit agreement. Chilmark next alleges that TRI is "the owner of all authorized, issued Class B Common Shares of MTS." Finally, Chilmark alleges that the trust Defendants and

individual Defendants are "affiliates of MTS as a result of their beneficial and actual ownership interests in TRI, the sole shareholder of MTS." Pursuant to a forum selection clause in the agreement, Chilmark sued the Defendants in this district. In response, the alleged "subsidiaries and affiliates" move to dismiss all counts against them on the grounds that they are not parties to the contract and Chilmark has not stated a claim against them. Fed. R. Civ. P. 12(b)(6). The moving Defendants also argue that they are not subject to personal jurisdiction in the Northern District of Illinois.

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the complaint rather than the merits of the case. *Midwest Gas Serv. v. Indiana Gas Co.*, 317 F.3d 703, 714 (7th Cir. 2003). In reviewing a motion to dismiss, a court construes all allegations in the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). The moving party bears the burden of showing "beyond doubt that the plaintiff can prove no set of facts in support of his claim" that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Although federal courts require notice, not fact, pleading, a plaintiff cannot withstand a motion to dismiss, however, by relying upon conclusory statements of law or unsupported conclusions of fact. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002); *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1998). In other words, a plaintiff "must set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery." *Menard Inc. v. U.S. Equities Dev., Inc.*, No. 01 C 7142, 2002 WL 31050160, at *1 (N.D. Ill. Sept. 13, 2002).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction." *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987). In ruling on a 12(b)(2) motion, the court must accept as true the jurisdictional allegations in the complaint, unless defendants submit contravening affidavits. *Id.* Any conflicts among the parties' affidavits must be resolved in favor of the plaintiff. *Id.*

### III. Analysis

A. *Defendants' 12(b)(6) Motions*

The resolution of the Defendants' 12(b)(6) motions turns upon whether there is some set of facts that would allow Chilmark to establish that a contract was formed between it and the moving Defendants. The moving Defendants point out that the contract does not specifically name them and that none of them signed the contract and thus never agreed to be bound by its terms. Accordingly, the moving Defendants argue that Chilmark's complaint against them should be dismissed because the complaint fails to allege that they are parties to the contract. The mere fact that the moving Defendant's never signed the contract, however, does not mean that they never agreed to be bound by its terms. Under Illinois law,[1] contract formation requires only the existence of an offer, an acceptance, and consideration. *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 979 (1997); *Martin v. Government Employees Ins. Co.*, 206 Ill. App. 3d 1031, 1035 (1990). The offeror has complete control over an offer and can prescribe that the offeree must sign the contract to accept it; but contract formation does not require a signature unless the offer explicitly governs the mode of acceptance. *La Salle Nat. Bank v. Vega*, 167 Ill. App. 3d 154, 161-62 (1988) (offer mandated that

---

[1] The contract contains a choice-of-law clause identifying Illinois law as the law governing the contract. None of the parties dispute that Illinois law applies, and so the Court applies Illinois law.

4

offer could only be accepted by signing agreement). It is well established that an offer may be accepted, even when offeree is silent, if the offeree accepts the benefit of an offer with the knowledge that the offeror expects compensation. *Boomer v. A T & T Corp.*, 309 F.3d 404, 414-15 (7th Cir. 2002). In addition, an agent acting with apparent or express authority may enter into a contract on behalf of the principal. *See, e.g., Weil, Freiburg, & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill. App. 3d 383 (1991); *see also Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2002). Accordingly, the Court rejects the moving Defendants' arguments that they are not parties to the contract merely because they did not sign the agreement.

But Chilmark is not yet out of the woods. In order to state a claim for breach of contract, Chilmark must at a minimum set out sufficient factual matter to outline the elements of its cause of action—that the Defendants were parties to the contract and that the contract was breached. As noted earlier, the elements of contract formation include an offer, acceptance, and consideration. In its complaint, Chilmark argues that the moving Defendants are parties to the contract because the contract explicitly included "any subsidiaries and affiliates," and each of the moving Defendants is a subsidiary or affiliate. But it does not follow that merely because language of the contract includes subsidiaries and affiliates that: (1) each of the moving Defendants is in fact either a subsidiary or an affiliate; or (2) that even if any moving Defendant is a subsidiary or affiliate that the language of the contract in and of itself is sufficient to establish that a valid contract was formed. Chilmark's conclusory allegations need not be taken as true and it cannot rely upon unsupported conclusions of fact to defeat the motions to dismiss. *Northern Trust Co.*, 69 F.3d at 129. Thus, the Court must examine whether there is some set of facts under which: (1) Chilmark could establish that each of the moving Defendants is a subsidiary or affiliate; and (2) a contract was formed either

because the alleged subsidiary or affiliate accepted the benefits of the contract knowing that Chilmark intended payment or because Solomon had the authority to bind the alleged subsidiary or affiliate.

Turning to the first inquiry, the Court observes that the contract neither specifically names MTS's subsidiaries and affiliates, nor does it define those terms. The Court must therefore construe the contract to determine whether the parties use of "affiliate" and "subsidiary" brings the moving Defendants within the contract's purview. Illinois subscribes to the "four corners" theory of contract interpretation. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). Under this approach, the court performs a threshold analysis to determine if the language within the four corners of the contract is reasonably susceptible to a single, definite meaning, or whether it is ambiguous. *Id.* at 1036-37. If the contract language is clear, the court should give it legal effect and enforce it. *P.A. Bergner & Co. v. Lloyds Jewelers Inc.*, 112 Ill.2d 196, 203 (Ill. 1986). The mere fact that the contract fails to define a term or phrase does not automatically render that language ambiguous. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 529 (Ill. 1995). Instead, in determining whether contract language is clear or not, the court looks to the plain and obvious meaning of the language. *Johnstowne Ctr. P'ship v. Chin*, 99 Ill.2d 284, 287-88 (Ill. 1983); *Rush Beverage Co. v. South Beach Beverage Co.*, No. 01 C 5684, 2002 WL 31749188, at *8 (N.D. Ill. Dec. 6, 2002) (consulting dictionary to determine the plain and obvious meaning of contractual language). In this case, the meaning of "subsidiary" and "affiliate" are not ambiguous. A subsidiary corporation is "a corporation in which a parent corporation has a controlling share." BLACK'S LAW DICTIONARY 345 (7th ed. 1999). An affiliate is "a *corporation* that is related to another corporation

by shareholdings or other means of control; a subsidiary, parent or sibling corporation." BLACK'S LAW DICTIONARY 59 (7th ed. 1999) (emphasis added).

Chilmark alleges in the Amended Complaint that the trust and individual Defendants are "affiliates as a result of their beneficial and actual ownership interests in TRI, the sole shareholder of MTS." As noted above, however, affiliates are *corporations* that are related to other corporations. The trust and individual Defendants are not corporations. They are shareholders. Chilmark's attempt to dress the trust and individual Defendants in the ill-fitting clothes of corporate affiliates is unconvincing. In essence, Chilmark asks the Court to disregard the corporate form and pierce the corporate veil without alleging a single fact that would justify such a measure. Under Chilmark's proposed definition of affiliate, any shareholder could become an affiliate of the corporation in which he owned shares and thus become liable for the debts and obligations of the corporation based solely on the shareholder's ownership interests. Such a definition obliterates the civil liability advantages of the corporate form and is patently unreasonable. Under the plain meaning of the language of the contract, the trust and individual Defendants, simply are not "affiliates" of MTS, and thus cannot be considered to be parties to the contract, and the motion as to all individual Defendants and trust Defendants is GRANTED.

On the other hand, TRKK admits that it is a subsidiary of MTS. In addition, Chilmark alleges that TRI is "the owner of all authorized, issued Class B common Shares of MTS Incorporated," making it the parent corporation of MTS—consistent with the plain and ordinary meaning of affiliate: "a corporation that is related to another corporation by shareholdings or other means of control." Because TRKK and TRI are each either a subsidiary or an affiliate of MTS, the Court turns to the second inquiry: whether some set of facts exists that would allow Chilmark to

establish that TRKK or TRI accepted Chilmark's offer to perform financial services for MTS and its subsidiaries and affiliates.

In this case, the Complaint alleges that Chilmark performed services for TRKK and that TRKK accepted the benefits of those services. Specifically, the complaint alleges that Chilmark arranged to broker a transaction resulting in the sale of TRKK and negotiated a credit agreement for TRKK. Affidavits attached to Chilmark's response to the motions to dismiss further detail the work it performed on behalf of TRKK.[2] According to Chilmark, it consulted with TRKK executives and legal counsel in order to determine the best course of action in its efforts to restructure TRKK's debt. In this regard, TRKK is more than a third party beneficiary. TRKK did not simply indirectly benefit from work Chilmark performed on behalf of MTS; instead, TRKK benefitted directly from work Chilmark performed. Given the language in the contract including MTS's subsidiaries as parties to the contract and TRKK's apparent acceptance of the benefits of that contract, the Court can imagine some set of facts that would allow Chilmark to establish that TRKK agreed to be bound by the contract even though it was not a signatory to the agreement. Of course, at this stage of the litigation, the Court accepts all of Chilmark's allegations as true, and after the completion of discovery, Chilmark bears the burden of establishing that a valid contract was formed between it and TRKK.

---

[2] Contrary to Defendants' argument that Chilmark's reliance on the affidavits is improper, it is well settled that a *plaintiff* may assert additional facts, either in its brief or in affidavits, in response to a 12(b)(6) motion, so long as those additional facts are consistent with its complaint. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir.1997); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439 (7th Cir.1994); *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir.1992).

With regard to TRI, Chilmark never alleges that TRI accepted any benefits of the contract. Instead, Chilmark argues that the parties understood that Michael Solomon had the authority to bind MTS's "subsidiaries and affiliates." In other words, Chilmark argues that Solomon, acting as the president of MTS, had apparent authority to bind MTS's parent corporation, TRI (as well as the trust and individual Defendants, but as noted earlier, they cannot be parties to the contract because they are not affiliates). Chilmark again relies upon affidavits of its partners in support of its claims. But the only fact that Chilmark alleges to demonstrate that Solomon had the authority to bind the owners of MTS is that Matthew Rosenberg, one of Chilmark's partners who negotiated with MTS, "understood that . . .Solomon had the authority to bind MTS, its other owners, and the various companies that MTS owned." However, only the words or conduct of the alleged *principal*, not the alleged agent, can establish the authority of an agent. C.A.M. *Affiliates, Inc. v. First American Title Ins. Co.*, 306 Ill. App. 3d 1015, 1021 (1999). Rosenberg's "understanding" is insufficient to demonstrate that Solomon had the authority to bind TRI. Chilmark simply points to nothing to suggest that TRI gave Solomon, acting at the time as President of MTS, the authority to bind it. Accordingly, TRI's motion to dismiss is also GRANTED.

B. *Personal Jurisdiction*

The Court need not address whether it has personal jurisdiction over TRI, the individual Defendants, and the trust Defendants because it finds that Chilmark failed to state a claim against those Defendants. As noted earlier, Chilmark bears the burden of demonstrating a prima facie case that personal jurisdiction exists, but that any conflicts in the parties' affidavits must be resolved in its favor. *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Turnock*, 816 F.2d at 333. Parties whose cause of action is grounded in a contract containing a forum selection clause

will be deemed to have waived any objection to personal jurisdiction. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-12 (1972); *United Airlines Inc. v. ALG, Inc.*, 873 F. Supp. 147, 151 (N.D. Ill. 1995). Forum selection clauses are presumptively valid unless the opposing party demonstrates that enforcement would be unreasonable. *M/S Bremen*, 407 U.S. at 10. Here, the Plaintiff alleges that because TRKK is a subsidiary to MTS, it is a party to the contract, which includes MTS's subsidiaries and which contains a forum selection clause consenting to the jurisdiction of Illinois courts. TRKK makes no effort to demonstrate that enforcement of the forum selection clause is unreasonable, instead arguing that it is not a party to the contract. But as noted earlier, Chilmark has put forth some set of facts that could demonstrate that TRKK is a party to the contract, and thus bound by the forum selection clause and consenting to the exercise of personal jurisdiction over it. Because the Court resolves factual disputes in favor of Chilmark in resolving a 12(b)(2) motion, TRKK's motion is DENIED.

## CONCLUSION

TRKK's Rule 12(b)(6) and Rule 12(b)(2) motions to dismiss are DENIED. The 12(b)(6) motion to dismiss by TRI, the Russell Solomon Trust, the Michael T. Solomon 1994 Trust, the David Solomon 1994 Trust, the Andrew Solomon Trust, the Aaron O. Solomon Trust, Russell Solomon and Michael T. Solomon is hereby GRANTED and Chilmark's complaint as to these Defendants is dismissed with prejudice.

IT IS SO ORDERED

4/23/03
Date

Wm. J. Hibbler
The Honorable William J. Hibbler
United States District Court

10